## WILLIAM H. LEWIS *v.* THE PARK BANK.

It being, by statute, the duty of a public officer to deposit all public moneys received by him in some bank selected by him, &c.:

*Held,* That the mere designation of a bank by the officer as the depositary of the public funds, imposed no duty and conferred no right upon such bank as to such funds, until actually deposited with, and accepted by, it.

The Broadway Bank having been selected by the city chamberlain as the depositary of the public moneys, in the place of the Park Bank, which had been selected by a former chamberlain, demanded from the latter the public funds on deposit with it, which, on refusal, it was compelled, by *mandamus,* to deliver. In an action by the assignee of the Broadway Bank against the Park Bank, to recover damages for the wrongful detention of such moneys: *Held,* On demurrer to the complaint, that no action would lie.

APPEAL by the plaintiff allowing a demurrer to the complaint.

The complaint alleged and the demurrer admitted:

1. That the Broadway Bank, the assignor of the plaintiff, was, on the 26th December, 1860, by the city chamberlain, appointed depositary of moneys belonging to the city and county of New York, and notice thereof given to the defendant.

2. That the moneys on deposit with the Park Bank were demanded, but it refused to surrender, transfer, or deliver the same to the comptroller of the Broadway Bank.

3. That the Supreme Court, by peremptory *mandamus,* commanded the defendant to transfer and pay over the said funds to the Broadway Bank, and the same were, on the 15th February, 1861, transferred and paid over to said bank.

4. That, by the refusal to surrender and deliver said moneys before the last mentioned day, and the detention thereof, plaintiff suffered loss and damage, that is, the interest it would have made by loaning out the deposits during the time which elapsed from December 26, 1860, to February 15, 1861. The defend-

ant demurred to the complaint, which the court allowed, and dismissed the complaint, with the following opinion :

CARDOZO, J.—I think it is an error to suppose that the Broadway Bank, the assignor of the plaintiff, had any legal right whatever, until money had actually been deposited with it by the chamberlain, and as that error lies at the basis of this action, the defendant is entitled to judgment on the demurrer.

An examination of the act of 1860 (ch. 477, p. 953), shows that the deposits are to be made by the "chamberlain," from time to time, as received by "him." The designated bank is to receive the deposits from the chamberlain, not from any one else. It is a mistake to term the bank a "depositary" of the money until it has actually been deposited. The chamberlain, by virtue of his office, may have the right to demand the possession of money belonging to the city, to deposit in the bank he designates under his official bond, but that was *his* right, and not the bank's, and could not confer any interest or right of action on the latter. Until money has actually been received by the chamberlain and deposited by him, it being his duty, "without delay," upon its receipt, to make the deposit, it is only a question of the performance of his official duty. It may be, though I express no opinion on the point, that the city or the chamberlain might have maintained, and that perhaps it was his duty to bring, an action against the Park Bank to recover the deposits, with interest, for the benefit of the public, but, until the deposits actually reached the Broadway Bank, it had no interest in them. This seems to me to be clear from another consideration. The mere designation by the chamberlain of a bank, under his official bond, pursuant to the above-mentioned statute, did not devolve any duty upon the bank. It was not obliged to receive, and might refuse to accept, the deposits. The designation, therefore, imposed no duty, and consequently gave no right. Its duty and its right commenced when money was actually deposited with and accepted by it. Then it became a "depositary."

The mandamus mentioned in the complaint was a proceeding, not upon the part or behalf of the Broadway Bank, but

upon the relation of Mr. Devlin, the chamberlain, and in the absence of any averments showing that the Supreme Court decided any thing more in that matter, I think the whole effect of that proceeding was to establish the right of the chamberlain to change the bank of deposit, and to transfer the money, of which he is the legal custodian, to the newly selected bank. I do not see that any right of the Broadway Bank was passed upon in that matter. Judgment for defendant on demurrer, with costs.

From the judgment the plaintiff appealed to the general term.

*Stilwell & Swain*, and *John E. Burrell*, for appellant.

I. By the laws of 1860, it became the duty of the comptroller to select the particular bank in which the moneys of the city and county were to be deposited.

II. The bank in which the moneys of the city and county. are by law required to be deposited, are not to be regarded merely as private depositaries, but become, to some extent, public officers, and charged with duties to the public and to each other, the due performance of which may be enforced.

III. The refusal of the defendant to pay over the moneys to the Broadway Bank was wrongful, and in violation of the duty imposed on it by law, and, for such refusal, an action lies in favor of any party injured.

IV. The Park Bank, not having any interest in or claim upon the moneys, the request of the chamberlain to deliver over these moneys to the Broadway Bank, operated, so far as the two banks were concerned, as a transfer of such moneys to the Broadway Bank, and entitled such bank to receive them; in other words, the authorization and request created and vested in the Broadway Bank an interest in such moneys sufficient to entitle it to maintain this action.

V. The peremptory mandamus mentioned in the complaint, and which was obeyed by the defendant, conclusively established the duty of the defendant to transfer the moneys to the Broadway Bank, and the right of the latter to receive them; and, moreover, it conclusively established against the Park

Bank every fact necessary to sustain the issuing of such writ (*White* v. *Coatsworth*, 6 N. Y. 139; *Van Wormer* v. *Mayor*, 15 Wend. 262; *Mercein* v. *People*, 25 Id. 64, 106).

*Townsend & Hyatt*, and *J. W. Edmonds*, for respondent.

I. The money did not belong to the chamberlain, but to the city, or the county, or the public creditors in the sinking fund, or the parties who are interested in the court fund. When the money had been legally deposited, the chamberlain's responsibility for it ceased, and he could not make any profit out of it. By the deposit the owner of the fund becomes a general creditor of the bank (*Chapman* v. *White*, 6 N. Y. 412). Out of this relation grows the right of the bank to loan money deposited with it (*Commercial Bank* v. *Hughes*, 17 Wend. 94), so that all the right the Broadway Bank had or could have in the premises was that, in consequence of its being a general debtor to the owners of the fund, it could loan the money and receive profit on it. It had no right to compel the deposit to be made in its vaults, nor any right to demand interest from any other depositary.

II. If any one could have maintained a suit for either principal or interest of the fund, it could only be the owner or his agent (Story on Bailm. § 260). 1. No interest is recoverable on deposits in bank, unless by special agreement or usage known to both parties. 2. Neither the owners of these funds nor their agent, the chamberlain, could have recovered from the Park Bank any thing for the use of the deposits. 3. How, then, can the Broadway Bank have greater rights than they? And if the Broadway Bank recover in this action, what is there to protect the Park Bank from a recovery by the owners of the fund, or by their agent, the chamberlain?

III. This action, though in form for damages, is in reality for the recovery of interest on the deposits. Interest is never recoverable but as an incident to a debt (*Renss. Glass Factory* v. *Reid*, 5 Cow. 610), or as a measure of damages, and then only as incident to the principal of the damage (*Carlton* v. *Bragg*, 15 East. 226). It is never allowed in either case solely

by itself, but only as such incident, so that when the principal is paid and received, there can be no recovery for interest (*Fake* v. *Eddy*, 15 Wend. 76; *Consequa* v. *Fanning*, 3 Johns. Ch. 587; *Jacob* v. *Emmet*, 11 Paige, 142; *Williams* v. *Houghtailing*. 3 Cow. 86). It is never allowed on the principle of the use of the money, but only on the unjustifiable default of the debtor (*Renss. Glass Co.* v. *Reid*, 5 Cow. 587).

IV. But if it is not an action for interest, but for damages for the detention of the money, the damages sought to be recovered are too remote. They depend upon too many "ifs." 1. *If* the Broadway Bank had obtained the money; 2. *If* they had found borrowers enough; and, 3. *If* these borrowers had all paid up, they might have made a profit. Such damages only are recoverable as flow immediately and necessarily from the act (Mayne on Dam. (14), 92 Law Lib. 36; *Hauslip* v. *Padwick*, 5 Exch. 615; *Archer* v. *Williams*, 2 Carr. & Kirw. 26; *Griffen* v. *Culver*, 16 N. Y. 489; *Crain* v. *Petrie*, 6 Hill, 522; *Kennedy* v. *Ray*, 22 Barb. 511; Sedgwick on Dam. 78; *Blanchard* v. *Ely*, 21 Wend. 342).

BY THE COURT.—BRADY, J.—The plaintiff seeks to recover, as the assignee of the Broadway Bank, the damages sustained by the latter, in consequence of the refusal of the defendants to deliver or pay over the money on deposit in their bank belonging to the city and county of New York, to which they were entitled, having been selected as the depositary of such fund by the city chamberlain. The claim for damages seems to rest upon the interest that would have been received upon the loans of the money, or some portions of it, and of which they were deprived by such refusal. There is no doubt that Mr. Devlin, the city chamberlain, as required to do by law (Laws of 1860, chap. 477), selected, in the exercise of his discretion, the Broadway Bank as the place for the deposit of the moneys belonging to the city and county of New York, and that the defendants holding them, as the depositary selected by Mr. Devlin's predecessor, refused to transfer them to the Broadway Bank. It is not necessary to inquire into the causes of, or reason for, this

conduct on the part of the defendants, inasmuch as the decision of the question involved in this case depends upon the abstract right of the plaintiff to recover upon the mere nomination of the Broadway Bank, as the successor of the defendants, for the purpose mentioned. It cannot be questioned, that the deposit of the funds in the bank, either of the defendants or the Broadway Bank generally, would make the owner of them a creditor of the bank (*Chapman* v. *White*, 6 N. Y. 412), and that though the city chamberlain, as legal custodian, determines the place of deposit, the fund is not his; the right of property in it is not changed by his act of deposit, and that the city and county of New York continues to be the owner. The Broadway Bank, therefore, from the time of its receipt only, would assume all the responsibilities growing out of its undertaking to safely keep it and duly pay all drafts upon it in the mode established by law. In reference, then, to the period for which the loss of interest or damages is claimed, the Broadway Bank had no duty to perform—no obligation to discharge—and no responsibility to bear. The loss of any benefit to be derived from the use of the money while thus detained, was a legal detriment, neither to the Broadway Bank nor to the city chamberlain, but to the owner of the fund. The city chamberlain could not withdraw it save in the manner specifically provided by law or ordinance. He could not, therefore, employ the money in any manner to his personal gain, and if he could not do so, he could not recover for any loss arising from the detention of the money. It may here with propriety be asked, if he could not successfully make such a claim, how is it possible for the Broadway Bank to do it? If the Broadway Bank are to be regarded as public officers at all, which is not admitted, it is as trustees of a fund with which they have no right to meddle, and the accumulations of which they could not appropriate. In addition to these objections it must be said, that if they were entitled to the possession of the moneys from the mere circumstance of their having been selected as the depositary of the funds, it was their duty at once to take measures to obtain it. If their relations to the city chamberlain or to the city

and county of New York began upon their selection as the custodians of the fund, they were placed under obligations which required an immediate exercise of their right to secure the fund against any contingency by which it should be endangered. Regarded as public officers, they would be remediless until they entered upon the discharge of their duties, which, as they related exclusively to the keeping and disbursement of the funds to be received, could not commence until the deposit was made in their bank. They were, however, under no obligation. Their responsibilities commenced when the moneys were deposited with them, and not before. The transfer of the fund to them was one of the duties of the city chamberlain, when he selected them as its custodians. Upon the argument of this appeal it was said, that this was an action which, in its nature, assimilated to the old action on the case, and that if the plaintiff was entitled to the possession of the fund, he could maintain it. This proposition cannot be sustained. There are cases in which a party having a bare possession of goods, which is *prima facie* evidence of property, may sue a wrongdoer who takes or injures them, although it should appear that the former has not the strict legal title. An action for injury to personalty may also be brought in the name of the person having only a special property or interest of a limited or temporary nature therein; but in this latter case the rule is, the party should have *had* the actual possession (1 Chitty's Plead. 71). The Broadway Bank never had possession of the money and the special property which would result from such possession, imposing, as it would, the care and protection of the fund, never existed. This is not a case either in which the Broadway Bank can sustain the demand made, upon the ground that they were bailees. A bailment is a delivery of a chattel for a specific purpose (Story on Contracts, § 682), and it appears, therefore, that they were not entitled to the possession of the money, by reason of any right of property, general or special, and that their limited interest in it is of no avail, because it was never placed in their custody. Having no general or special property which gave them the right of possession, this action must fail as an action

on the case, considered with reference to the rules which govern such litigations. If the Broadway Bank has sustained any damage which does not appear, the maxim *damnum absque injuria* applies, and this action must fail. Whatever interest they had in the fund was contingent upon their receiving it, and was to commence only when the possesion of it was acquired, as already suggested. The opinion of Justice Cardozo was correct, therefore, and the judgment directed by him must be affirmed.