## Caleb N. Price,

### *vs.*

## Horrigan Contracting Company.

### *New Castle, Sept.* 18, 1915.

A rule to show cause should not be substituted for an action at law by receivers to collect a debt due the corporation at the time of their appointment.

Act of General Assembly approved March 19, 1913 (27 *Del. Laws, c.* 194), vests in receivers of a company the title to all its assets by operation of law and without a transfer, except real estate outside of the State. After the appointment of receivers for a contracting company, the Levy Court of a County directed payment to a bank, the company's assignee, of the retained percentages on several roads constructed by the company, whereupon the receivers obtained a rule requiring the bank to show cause why it should not pay over such money to them. *Held*, that the receivers were not remitted to their action at law, and that the proceeding was proper, as affording a prompt hearing to disclose the real facts and assist the court in fully administering all the assets without unnecessary delay.

STATEMENT OF THE CASE. The receivers of the Horrigan Contracting Company filed a petition setting forth that at the time of their appointment the Levy Court of New Castle County held $3,710.85 pursuant to five contracts under which the company had built certain County roads, and by which contracts five per cent. of the contract price was withheld to cover any repairs which were required to be made within a year from the completion of the road. This period of one year had expired as to four of the contracts at the time of the appointment of the receivers, and as to the fifth contract about seven months thereafter. On December 29, 1914, the Levy Court of New Castle County passed a resolution directing payment to the Farmers' Bank, assignee of the Horrigan Contracting Company, of $3,000 part of the sum of $3,710.85 "due and owing to the said Horrigan Contracting Company as percentages on the several roads constructed by the

said company," and applied the balance of the sum, $710.85, to defray the cost of repairs to the roads. Pursuant to this resolution the sum of $3,000 was afterwards paid to the Farmers' Bank, thereby, it was averred, depriving the receivers of possession and control of an asset belonging to the insolvent company and which should have been paid to the receivers. As prayed for, a rule was granted on June 22, 1915, requiring the Farmers' Bank to appear on September 10, 1915, and show cause, if any there be, why it should not be directed to pay the money received by it to the receivers.

At the hearing of this rule the solicitor for the bank filed a motion to dismiss the petition for the reasons that the receivers had not suffered any injury, or sustained any damages, or been deprived of the possession or control of any asset by or through any act of the bank, and also that as there was a plain and adequate remedy at law a court of equity had not jurisdiction.

*Marvel, Marvel & Wolcott,* for the petitioners.
*Henry Ridgely,* for the Farmers' Bank.

THE CHANCELLOR. In support of the motion to dismiss the petition the solicitor for the bank cited authorities for the motion, urging chiefly that the receivers had been deprived of no tangible property, and that as the payment by the Levy Court was officious, the receivers still had a remedy against that body and so there had been no interference with the possession of the receiver of any asset of the company.

An examination of the cases does not satisfy me that the contention of the bank is tenable. The case most relied on was that of *Receiver of State Bank v. First National Bank of Plainfield,* 34 *N. J. Eq.* 450. But there the main reason for denying relief to the receiver by a rule to show cause based on a petition was that by the practice in New Jersey a bill was proper in such cases, and not a petition. The other cases cited do not apply, and it is not necessary to cite authority for the principle that a rule to show cause should not be substituted

for an action at law by the receivers to collect a debt due the corporation at the time of the appointment of the receivers.

The solicitors for the receivers cited authorities to show that this was clearly an illustration of the well determined and fundamental principle, that the court appointing a receiver of an insolvent corporation will assist the receiver in gaining possession and retaining control of all the assets of the insolvent company for the purpose of a proper and orderly administration thereof by the court for the benefit of all concerned, and will require a payment or delivery to the receiver of any moneys or assets of the company which by interference with the receiver's rights have been taken by any other person.

One of the authorities submitted seems clearly to settle the question here considered, viz., the case of *Bien v. Robinson, Receiver of Haight & Freese Co.*, 208 *U. S.* 423, (same case in Circuit Court, *Bowker v. Haight & Freese Co.*, 146 *Fed.* 257). After receivers of the corporation had been appointed by the United States Circuit Court and an order made enjoining all persons from paying over or transferring any money or assets of the company to any person other than the receivers, an officer of the company gave to Bien a check drawn on a bank in which moneys of the company were on deposit. Bien having learned of the appointment of the receiver, and of the order, had the check certified, indorsed it and collected it through a third person. Thereupon the receiver filed a petition and thereon a rule was issued by the court appointing the receiver requiring Bien to show cause why an order should not be made requiring him to pay to the receiver the money so collected on the check, with interest. The application was heard on affidavit and an order made requiring payment to the receivers with interest, within ten days, and to this Bien sued out a writ of error to the United States Supreme Court. One of the grounds of error was that the right of the receiver to the fund could not be determined in a summary proceeding, but could only be adjudged in an action at law to recover the proceeds of the check. This contention the court said was "manifestly frivolous," saying:

"Reduced to its last analysis, the contention of this branch of the case is that a court of equity, which in the due exercise of jurisdiction had appointed receivers of the assets and property of the corporation and enjoined interference by others with such property, was without power, by summary process, after due notice and opportunity to be heard, to compel a repayment by one who, with knowledge of the order of injunction and in violation of its terms, took in satisfaction of an indebtedness from a debtor to the corporation, property forming part of the assets of such corporation. We think the contention and the assignments of error based thereon are so manifestly frivolous as to be utterly insufficient to serve as the foundation for a writ of error."

In that case there was an order enjoining every person from transferring any money of the company to any one other than the receivers, and this fact was considered by the court; but whether it was a necessary, or even important, fact does not appear. Evidently the court based its decision on the interference with the administration of the affairs of the company, and not on a disobedience of its injunctive order. It can be readily believed, too, that the court would still have regarded as manifestly frivolous a similar contention in a case where there was no such injunctive order, but where by statute the title in all the property and assets of the insolvent company is vested in a receiver appointed for it. In addition to the general powers incident to all receivers under general rules there is a statute in this State vesting in receivers the title to all the assets of the company by operation of law and without a transfer, except real estate outside the state. *Chapter* 194, *volume* 27, *Laws of Delaware, p.* 479, approved March 19, 1913. This, of course, does not invalidate any liens or pledges of such property.

It is urged that there has been no interference with the administration of the estate by the receivers, and that the receivers still have the same rights against the Levy Court to recover the money officiously paid to the Farmers' Bank. But the situation has been changed, for it might be assumed that but for the action of the bank in securing part of the money due the Horrigan Contracting Company, the Levy Court would have paid the money to the receivers without suit; whereas now it will necessarily resist payment, and if

there be any lack of speedy legal remedy to recover from the Levy Court the money, the obstacles may be increased. In this case it should be noted that one of the two receivers is the cashier of the Farmers' Bank.

The proceeding taken is proper, for it gives a prompt hearing to reach the real facts and assists the right and duty of the court to fully administer all the assets of the company without unnecessary formalities or delays. Because the New Jersey court felt bound by an existing practice to have the relief by a bill, does not prove that the proceeding by a rule to show cause as approved by the Supreme Court of the United States is not as suitable and proper, and on the authority of the latter case alone, this court may rely in this matter.

For these reasons the motion to dismiss the petition and discharge the rule will be denied, and the rule will be set down for hearing at an early date.